IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE OWENS, #B09385, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-01140-JPG |
| ) | |
| VIPEN SHAH, C/O MERACLE, ) | |
| COUNSELOR SAMOLINSKI, ) | |
| UNKNOWN PARTY, JOHN COE, ) | |
| COUNSELOR HORTON, ) | |
| MARK HARTMAN, LT. FURLOW, ) | |
| WEXFORD MEDICAL SOURCES, ) | |
| BETSY SPELLER, MARCUS HARDY, ) | |
| C/O BAILEY, NURSE BRITTANY, ) | |
| C/O SMITH, SUZAAN BAILEY, ) | |
| MARCUS MYERS and MYERS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Tyrone Owens is currently incarcerated at Pinckneyville Correctional Center. On October 14, 2015, he filed a complaint pursuant to 42 U.S.C. § 1983 against sixteen known and numerous unknown defendants. Owens claims that the defendants violated his constitutional rights at Pinckneyville Correctional Center ("Pinckneyville") and Lawrence Correctional Center ("Lawrence"). He also asserts claims against the defendants under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794(a), and Illinois law. (Doc. 1).

The complaint is now before the Court for preliminary review. The pleading does not survive screening. It violates the pleading requirements set forth in the Federal Rules of Civil Procedure and clearly runs afoul of *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

The complaint shall therefore be dismissed. However, the dismissal shall be without prejudice. Owens will be given an opportunity to file an amended complaint.

### The Complaint

Owens' complaint spans 117 pages. (Doc. 1). The substantive allegations are set forth in the first 21 pages. *Id*. at 1-21. The remaining 96 pages consist of exhibits. (Docs. 1-1, 1-2, 1-3). Owens identifies fifteen (15) separate "counts" against the defendants. For purposes of this discussion, the Court has re-organized the complaint into fourteen (14) numbered counts that generally track those described by Owens:

Count 1: Coe and Wexford conspired to deny Owens adequate medical treatment for his fractured hand in December 2013, in violation of the Eighth and Fourteenth Amendments (*Id*. at 8) (Count I, instant complaint; Count 3, prior case);

Count 2: Coe misdiagnosed Owens with Type I diabetes on September 21, 2014, and subjected him to twice-daily insulin shots despite Owens' complaints of negative side effects, in violation of the Eighth Amendment and Illinois law (*Id*. at 8-9) (Count II, instant complaint; Count 4, prior case);

Count 3: Horton "conspired to retaliate" against Owens for filing too many grievances and lawsuits by ignoring his daily complaints of inadequate medical care in 2013-14 and "silencing" him by wrongfully transferring him to a disciplinary prison, in violation of the First, Eighth, and Fourteenth Amendments, the ADA, and Illinois law (*Id*. at 9-10) (Counts II-III, instant complaint; Count 6, prior case);

Count 4: Shah and Wexford delayed or denied Owens adequate medical care for his diabetes and related symptoms, in violation of the Eighth Amendment, Fourteenth Amendment, and Illinois law (*Id*. at 8-10, 15) (Counts II, IV, X, instant complaint; Count 7, prior case);

Count 5: Horton, Hartman, and Thomas Spiller conspired to violate Owens' rights under the First, Eighth, and Fourteenth Amendments when they "facilitated" his transfer to the same cell with the inmate who killed Owens' cousin (*Id*. at 11) (Count V, instant complaint; Count 9, prior case);

Count 6: Betsy Spiller, Thomas Spiller, Marcus Hardy, Ty Bates, Salvador Godinez, Gladys Wilson, C/O Jane Doe, "Ms. G," and Lieutenant Conway violated Owens' rights under the ADA, Rehab Act, Eighth Amendment, and Fourteenth Amendment by implementing policies that deprived him of access to phones, the dayroom, and the showers (*Id*. at 12-13) (Count VII, instant complaint; Count 10, prior case);

Count 7: Hardy, Betsy Spiller, and Lashbrook conspired to violate Owens' rights under the Rehab Act, ADA, Eighth Amendment, and Fourteenth Amendment by placing him in a one- or two-person cell at Pinckneyville with four men (*Id*. at 11) (Count VI, instant complaint; Count 11, prior case);

Count 8: Brittany, Bailey, Merecle, Hartman, Samolinski and Wexford conspired to deprive Owens of adequate medical care for his diabetes on December 16, 2014, when they delayed proper treatment for his dangerously low blood sugar and then deprived him of a diabetic snack bag, in violation of the First, Eighth, and Fourteenth Amendments (*Id*. at 14) (Count VIII, instant complaint; Count 12, prior case);

Count 9: Hardy, Bailey, Shah, Wilson, Lashbrook, and Cantina Food Services conspired to make money and deprive Owens of adequate nutrition by instituting a two-meal-per-day policy at Pinckneyville, in violation of Owens' rights under the ADA, Eighth Amendment, and Fourteenth Amendment (*Id*. at 15-16) (Count XI, instant complaint; Count 14, prior case);

Count 10: Bailey, Hardy, Wilson, and Shah conspired to violate Owens' rights under the ADA, Eighth Amendment, and Fourteenth Amendment when they implemented a policy of serving inmates a soy diet (*Id*. at 17) (Count XIII, instant complaint; Count 15, prior case);

Count 11: Smith and Furlow conspired to violate Owens' rights under the First, Eighth, and Fourteenth Amendments when Smith grabbed Owens' buttocks on January 21, 2015 (*Id*. at 16) (Count XII, instant complaint; Count 17, prior case);

Count 12: Shah, Unknown Eye Doctor, Hartman, and Wexford conspired to deprive Owens of adequate medical care by issuing him the wrong prescription glasses and charging him for them on December 15, 2014, in violation of the First, Eighth, and

>    **Fourteenth Amendments (*Id.* at 14-15) (Count IX, instant complaint; Count 19, prior case);**
>
> **Count 13:** **Samolinski conspired to retaliate against Owens by taking a bag of his hot-n-spicy corn chips, opening them, and smiling at Owens, in violation of the First, Eighth, and Fourteenth Amendments (*Id.* at 18) (Count XIV, instant complaint); and**
>
> **Count 14:** **Marcus Myers and Investigator Myers conspired to violate Owens' rights under the First, Eighth, and Fourteenth Amendments when they issued him a false disciplinary ticket and punished him with five months of segregation following an unfair disciplinary hearing (*Id.* at 18) (Count XV, instant complaint).**

In connection with the above-listed claims, Owens seeks monetary damages. *Id*. at 20. In his request for relief, Owens also seeks a temporary restraining order and/or preliminary injunction in the form of an order for his immediate transfer to a prison in the Northern District of Illinois. *Id*.

## Discussion

Owens has filed a blunderbuss complaint. He raises claims against sixteen known and numerous unknown defendants for violations of his rights under federal and state law. He organizes the complaint into fifteen separate counts. Many of the counts consist of multiple claims. The counts are unrelated to one another and involve separate groups of defendants.

This style of pleading violates the Federal Rules of Civil Procedure. Although Federal Rule of Civil Procedure 18 allows a plaintiff to include in one complaint "every claim of any kind against a single defendant," Federal Rule of Civil Procedure 20 allows additional claims against separate defendants only if the additional claims arise "out of the same transaction, occurrence, or series of transactions or occurrences." *See* FED. R. CIV. P. 18(a), 20(a)(2). A "litigant cannot throw all of his grievances, against dozens of different parties, into one

stewpot." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). That is exactly what Owens has done.[1]

He has joined numerous discrete claims against separate groups of defendants in a single action. The claims fall into *at least* six separate categories: (1) medical issues (Counts 1, 2, 3, 4, 8, and 12); (2) disciplinary transfer (Count 5); (3) disability-related access claims under the Rehab Act and ADA (Counts 6 and 7); (4) inadequate nutrition (Counts 9 and 10); (5) excessive force (Count 11); potato chip retaliation (Count 13); and (6) punishment with segregation without due process of law (Count 14). Each category of claims involves a discrete group of defendants, or is subject to further subdivision. Owens should have filed six or more separate suits to address these claims, instead of one. When a plaintiff presents the Court with a complaint that violates Rule 20, the Court may require a plaintiff to submit "separate complaints, each confined to one group of injuries and defendants," which will then be "separately screened." *Id*.

The Court has already addressed this issue with the plaintiff in *Owens v. Coe, et al.*, Case No. 14-cv-1421-MJR-SCW (S.D. Ill. 2014) ("prior case") (Doc. 28), a related lawsuit that Owens filed on December 29, 2014. Owens' first amended complaint (Doc. 22, prior case) in the prior case was organized into sixteen "counts," most of which were improperly joined. The Court dismissed all but two of those counts (*i.e.*, Counts 13 and 16) without prejudice, and instructed Owens to bring separate actions to address his remaining claims. The Court pointed out that "many counts should have been filed as separate actions altogether because they address unrelated claims against different defendants at two separate institutions, . . . [a] method of pleading [that] clearly runs afoul of *George v. Smith*, 507 F.3d 605 (7th Cir. 2007)." *See id.*

---

[1] Owens has attempted to tie all of his claims together by alleging that the claims arose from a single conspiracy. The allegations offered in support of the conspiracy claim are conclusory. They do not suggest that one or more defendants had an agreement to deprive Owens of his rights.

(holding that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. at 607 (citing 28 U.S.C. § 1915(b), (g)).

The instant complaint represents Owens' attempt to pursue the claims that were dismissed in his prior case. In fact, most claims in the complaint (Doc. 1) are the same ones that Owens identified in his amended complaint (Doc. 22, prior case) in the prior case. He fares no better here.

This is because he has again thrown all of his claims, whether related or not, into a single action. In this way, Owens increases his chances of avoiding substantial filing fees associated with filing separate lawsuits. At the same time, he decreases his chances of "striking out" under the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(g).[2] However, the complaint *still* does not comply with Rule 20.

Owens has two options to deal with his Rule 20 blunder. He may pare down his case and proceed with a complaint that is limited to one discrete group of injuries and defendants. To do this, Owens will need to draft an amended complaint that focuses on one group of injuries and defendants and submit it to this Court as a "First Amended Complaint" using this case number, *i.e.*, 15-cv-1140-JPG. If Owens chooses this path, he will only incur the filing fee for this action; his other unrelated claims against different defendants will be considered abandoned by omission

---

[2] Owens is keenly aware of these consequences. In 2008, he "struck out" by filing three or more lawsuits that were dismissed as frivolous or for failure to state a claim. As a result, he was barred from proceeding *in forma pauperis* in any new civil action, where he was unable to demonstrate that he faced imminent danger of serious physical injury. 28 U.S.C. § 1915(g). Following the Seventh Circuit's decision in *Turley v. Gaetz*, 625 F.3d 1005 (7th Cir. 2010), Owens' strikes were re-evaluated, and one "strike" no longer qualified as such. Owens shed his "struck out" status. *See Owens v. Douglas, et al.*, Case No. 13-cv-2303 (N.D. Ill., dismissed for failure to state a claim on May 23, 2013); *Labarbra v. Sheahan, et al.*, Case No. 03-cv-6410 (N.D. Ill., dismissed for failure to state a claim on Sept. 16, 2003). However, he will regain this status, if he incurs one more strike.

and dismissed without prejudice from this action. *See Taylor v. Brown*, 787 F.3d 851, 857-58 (7th Cir. 2015) (amendment of complaint is a proper method for "adding or dropping parties and claims" when claims are misjoined).

Owens' other option is to *also* proceed with the unrelated claims in separately filed actions. If he chooses this path, Owens must draft one or more additional "separate complaints, each confined to one group of injuries and defendants." *Kadamovas v. Stevens*, 706 F.3d 843, 847 (7th Cir. 2013). He should file each additional complaint as a *new* action. Owens will be obligated to pay a filing fee for each new action he commences. When deciding which claims to pursue in this action and which ones to pursue in separately filed actions, Owens should remain mindful of the applicable statute of limitations.[3]

Finally, Owens should be aware that every complaint is subject to preliminary review and a possible "strike" under § 1915A. Every complaint is also subject to severance by this Court. Because the Court takes no position regarding any of the above-listed claims, some of them may be subject to dismissal at screening even after the Court severs unrelated claims into new cases. *See Wheeler*, 689 F.3d at 683 (noting that a district court may "creat[e] multiple suits" before preliminary review in a misjoinder situation, which can then be "separately screened").

Owens shall be given thirty-five day from the date of this Order to choose which path he wishes to take. If he chooses neither and does not respond to this Court's Order, the Court will dismiss this case under Federal Rule of Civil Procedure 41(b) for failure to abide by an Order of the Court.

---

[3] Section 1983 claims brought by prisoners who were injured in Illinois are governed by a two-year statute of limitations." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).

**Pending Motions**

A.   **Motion for Service of Process at Government Expense (Doc. 4)**

The motion for service of process at government expense is hereby **HELD IN ABEYANCE** pending the Court's receipt of the first amended complaint.

B.   **Motion for Recruitment of Counsel (Doc. 3)**

The motion for recruitment of counsel is hereby **DENIED**. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case -- factually and legally -- exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Owens has allegedly attempted to secure counsel by contacting twenty-five attorneys. To date, he has found no one to represent him. However, he indicates that he has "some college"

education, and his only reason for seeking recruitment of counsel at this time is because "too much expert knowledge [is] needed" in his case.

The Court cannot determine how much expert knowledge is required because Owens has not yet focused his claims. Until he files an amended complaint that addresses a single set of injuries against a discrete group of defendants, it is unclear how complex his claim(s) will be to litigate. And because he has demonstrated an ability to prepare a pleading that sets forth coherent allegations and claims, the Court cannot find that he is unable to take the next step of choosing which claims to pursue in this action and amend his pleading accordingly. At this early stage, the motion is denied. However, the denial is without prejudice, and the Court remains receptive to the idea of recruiting counsel should Owens wish to renew his request at any time after filing his first amended complaint.

### Request for TRO and/or Preliminary Injunction

In the complaint, Owens seeks a temporary restraining order ("TRO") and/or a preliminary injunction, in the form of an order for his immediate transfer to another prison. Owens did not file a separate motion setting forth the exact reason for his request, and he failed to state any reasons for the request in his complaint. It is therefore unclear why Owens seeks immediate relief and a TRO in particular. Without a viable complaint, it is also not possible to assess whether this request even pertains to the claim(s) he will pursue in this action. The Court is of the opinion that no immediate relief in the form of a TRO is warranted at this time. Should Owens wish to renew his request, he must file a motion pursuant to Federal Rule of Civil Procedure 65, stating exactly what relief he seeks and the reasons for the relief. Owens' request for a preliminary injunction shall be **HELD IN ABEYANCE** pending receipt of the first amended complaint.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff's complaint (Doc. 1) is **DISMISSED** without prejudice for non-compliance with Rule 20 of the Federal Rules of Civil Procedure.

Plaintiff is **GRANTED** leave to file his "First Amended Complaint" **on or before December 4, 2015.** Consistent with Rule 20, the first amended complaint should be limited to one group of injuries and defendants. Should Plaintiff fail to file his first amended complaint within the allotted time, dismissal will become with prejudice. FED. R. CIV. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994). Further, a "strike" may be assessed. *See* 28 U.S.C. § 1915(g).

Should Plaintiff decide to file the first amended complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. The pleading shall present each claim in a separate count, and each count shall specify, *by name*, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant. Plaintiff should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors. Plaintiff should refrain from filing unnecessary exhibits. Plaintiff should *include only related claims* in his new complaint. Claims found to be unrelated will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed. To enable Plaintiff to comply with this order, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff is **ADVISED** that this dismissal shall <u>not</u> count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1

(7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint. Thus, the first amended complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the first amended complaint.  The first amended complaint is also subject to review pursuant to § 1915A.

**IT IS FURTHER ORDERED** that, should Plaintiff file a first amended complaint that violates Rule 20, the amended complaint may be stricken.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed with separate claims linked to other groups of injuries and defendants, he must do so by commencing a new action and filing a separate complaint therein.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a first amended complaint.  See 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  See FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED: October 29, 2015

s/J. Phil Gilbert<br>United States District Judge